IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION


UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )   3:10CR174
                                   )   JANUARY 12, 2011
      vs                           )
                                   )
JAMAR SERON RANDALL,               )
                                   )
            Defendant.             )
_____/

        TRANSCRIPT OF PLEA & RULE 11 HEARING
      BEFORE THE HONORABLE DAVID C. KEESLER
          UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

FOR THE UNITED STATES:    MICHAEL SAVAGE, ESQ.
                          U. S. Attorney's Office
                          227 W. Trade Street
                          Suite 1700
                          Charlotte, NC 28202


FOR THE DEFENDANT:        CORY A. WILLIAMS, ESQ.
                          Cloud, Navarro & Williams
                          1101 South Boulevard
                          Charlotte, NC 28203


    Proceedings digitally recorded and transcript
                prepared by:

            JOY KELLY, RPR, CRR
        U. S. Official Court Reporter
          Charlotte, North Carolina
              704-350-7495

1              (Hearing commenced at 12:43:29 p.m.)

2              THE COURT:  All right.  Let's pick up with

3    Mr. Randall's case.  This is on the printed calendar for

4    12:15.  We're running a little bit behind here.  Sorry about

5    that.

6              Case number is 3:10CR174.  Mr. Williams, how are you

7    today, sir?

8              MR. WILLIAMS:  Doing fine, Your Honor.  How are you

9    doing, Your Honor?

10             THE COURT:  Good.  Do you represent him?

11             MR. WILLIAMS:  I do, Your Honor.

12             THE COURT:  Mr. Savage, are you here for the

13   government?

14             MR. SAVAGE:  Yes, Your Honor.

15             THE COURT:  Thank you very much.

16             We are here for plea and Rule 11 today in

17   Mr. Randall's case.  There is a Plea Agreement in the case

18   which appears to call for a plea of guilty by Mr. Randall to

19   Count One in his Bill.

20             Mr. Williams, is that what he wants to do today?

21             MR. WILLIAMS:  Yes, sir.

22             THE COURT:  Okay.  Mr. Randall, in order for me to

23   accept your plea, I need to ask you some questions.  Before I

24   do that, I need to have you sworn in.  So if you would please

25   put your left hand on the Bible, raise your right, face the

```
 1    clerk, please.
 2              (Defendant sworn.)
 3              THE COURT:  Okay.  Mr. Randall, have a seat there,
 4    make yourself comfortable.
 5              As I go through the questions now, sir, if you
 6    would, please answer out loud so I can hear you.  If you have
 7    any questions or concerns as we go along, of course feel free
 8    to talk to Mr. Williams about any of those things.  Do you
 9    understand?
10              DEFENDANT RANDALL:  Yes, sir.
11              THE COURT:  Okay.  Here we go.
12              Do you understand that you're under oath and
13    required to give truthful answers to these questions?
14              DEFENDANT RANDALL:  Yes, sir.
15              THE COURT:  Do you understand that if you give false
16    information under oath you may be prosecuted for perjury or
17    false statement?
18              DEFENDANT RANDALL:  Yes, sir.
19              THE COURT:  After consulting with your lawyer, do
20    you want this court to accept your guilty plea to one count in
21    your Bill of Indictment?
22              DEFENDANT RANDALL:  Yes, sir.
23              THE COURT:  Do you understand you have the right to
24    have a U. S. District Judge conduct this proceeding?
25              DEFENDANT RANDALL:  Excuse me?
```

1          THE COURT:  Do you understand that you have the

2    right to have a U. S. District Judge conduct this proceeding?

3          DEFENDANT RANDALL:  Yes, sir.

4          THE COURT:  Recognizing that right, do you expressly

5    consent to proceed before me, a United States magistrate

6    judge?

7          DEFENDANT RANDALL:  Yes, sir.

8          THE COURT:  Are you now under the influence of

9    alcohol, medicines or drugs of any kind?

10          DEFENDANT RANDALL:  No, sir.

11          THE COURT:  Is your mind clear today and do you

12    understand you're here to enter a guilty plea that cannot

13    later be withdrawn?

14          DEFENDANT RANDALL:  Yes, sir.

15          THE COURT:  Have you received a copy of the Bill of

16    Indictment in your case and have you discussed it with your

17    lawyer?

18          DEFENDANT RANDALL:  Yes, sir.

19          THE COURT:  Okay.  At this point what I'm going to

20    do, Mr. Randall, is to go over the charges with you.

21          Your plea today will be to Count One in the Bill of

22    Indictment, and that document reads as follows:  In Count One

23    it's alleged that on or about January 28, 2010, in Mecklenburg

24    County, within the Western District of North Carolina and

25    elsewhere, you, Jamar Seron Randall, having been previously

1  convicted of at least one crime punishable by imprisonment for

2  a term exceeding one year, did knowingly an unlawfully possess

3  a firearm, that is a Taurus model PT25, .25 auto caliber

4  semiautomatic pistol in and affecting commerce.  This is a

5  violation of Title 18, United States Code, Section 922(g)(1).

6  Now, this is the crime we refer to more commonly as possession

7  of a firearm by a convicted felon.

8          Now, the maximum penalty for this offense under

9  normal circumstances would be ten years imprisonment, $250,000

10 fine or both.

11         Now, there are some instances in which the defendant

12 has a long prior criminal record and qualifies as an armed

13 career criminal where the maximum penalty for this offense

14 would change.  In that event, it would become not less than 15

15 years nor more than life imprisonment, $250,000 fine or both.

16 But that's the charge you're pleading to today and the maximum

17 penalties that could apply.  Have you been over this carefully

18 with your lawyer?

19         DEFENDANT RANDALL:  Yes.

20         THE COURT:  Okay.  And do you believe you understand

21 the charge against you, possession of a firearm by a felon,

22 and the maximum penalties that could apply to you if you are

23 convicted?

24         DEFENDANT RANDALL:  Yes.

25         THE COURT:  Okay.  Now, have you been advised by

1    your lawyer, Mr. Randall, that if you are not a citizen of the

2    United States your guilty plea could have adverse immigration

3    consequences for you?

4          DEFENDANT RANDALL:  Yes, sir.

5          THE COURT:  In fact, have you been advised if you're

6    not a citizen, your guilty plea could result in deportation?

7          DEFENDANT RANDALL:  Yes.

8          THE COURT:  Have you talked to Mr. Williams about

9    how the U. S. Sentencing Guidelines might apply in your case?

10          DEFENDANT RANDALL:  I have.

11          THE COURT:  And do you understand the district judge

12    will not be able to determine your sentence until after a

13    Presentence Report has been prepared and you have had a chance

14    to comment on that?

15          DEFENDANT RANDALL:  I mean I have a little concern

16    about it.

17          THE COURT:  You have a little concern about it?

18          DEFENDANT RANDALL:  Yes, sir.

19          THE COURT:  Okay.  Well -- well, feel free to talk

20    to Mr. Williams there at the table for a moment if you'd like.

21    Go ahead.

22          (Pause)

23          Okay.  Let me ask that question again, and I do want

24    to make sure that if you have a concern, we talk about it if

25    that's appropriate.  But let me just begin again with that

1    question to be precise:  Do you understand that the district

2    judge in your case, who will be entering your sentence, will

3    not be able to determine your sentence until after a

4    Presentence Report has been prepared by the Probation Office

5    and you have had a chance to read it, talk to your lawyer

6    about it and make any comments on it that you want?

7              DEFENDANT RANDALL:  Yes, sir.

8              THE COURT:  Okay.  Do you understand that in some

9    instances you may receive a sentence that is different, that

10   is either higher or lower than those called for by the

11   Sentencing Guidelines?

12             DEFENDANT RANDALL:  Yes, sir.

13             THE COURT:  Do you understand that the Court may

14   order restitution or the payment of money by you if that's

15   appropriate in your case?

16             DEFENDANT RANDALL:  Yes, sir.

17             THE COURT:  Do you understand that if the sentence

18   is more severe than you expect or the Court does not accept

19   the government's recommendation, you'll still be bound by your

20   plea and have no right to withdraw it?

21             DEFENDANT RANDALL:  Yes, sir.

22             THE COURT:  Do you understand that parole has been

23   abolished in the federal system so if you are sentenced to a

24   term of imprisonment, you'll not be released early on what

25   used to be called parole?

1    DEFENDANT RANDALL:  Yes, sir.

2    THE COURT:  Okay.  That question is not as

3  complicated as it really sounds.  The federal system used to

4  have parole.  Frankly, we don't do that anymore.

5    DEFENDANT RANDALL:  Okay.

6    THE COURT:  If you're sentenced to a term of

7  imprisonment as we're going to talk about here in just a

8  minute, once you're released you'll be placed on supervised

9  release; a little bit different kind of deal.  Just wanted to

10  make sure you understood we don't do parole anymore.  Do you

11  understand that?

12    DEFENDANT RANDALL:  Yes, sir.

13    THE COURT:  Now, if the judge does sentence you to

14  imprisonment, do you understand the district judge will also,

15  in all likelihood, order a term of supervised release?

16    DEFENDANT RANDALL:  Yes, sir.

17    THE COURT:  And supervised release would involve

18  supervision of you for a period of time by the Probation

19  Office.  Do you understand that?

20    DEFENDANT RANDALL:  Yes, sir.

21    THE COURT:  Do you also understand that if you

22  violate the terms of supervised release you could go back to

23  prison for an additional period of time?

24    DEFENDANT RANDALL:  Yes.

25    THE COURT:  Do you understand you have the right to

1  plead not guilty, to have a speedy trial before a judge and

2  jury, to summons witnesses to testify in your behalf and to

3  confront witnesses against you?

4          DEFENDANT RANDALL:  Yes, sir.

5          THE COURT:  If you exercised your right to trial,

6  you would be entitled to the assistance of a lawyer.  You

7  would not be required to testify.  You would be presumed

8  innocent and the burden would be on the government to prove

9  your guilt beyond a reasonable doubt.  Do you understand all

10  these things?

11          DEFENDANT RANDALL:  Yes, sir.

12          THE COURT:  What that all amounts to, Mr. Randall,

13  is that you have a right to a trial by jury if you want one.

14  Do you understand that?

15          DEFENDANT RANDALL:  Yes, sir.

16          THE COURT:  By entering this plea of guilty today of

17  course you're waiving that right.  There's not going to be a

18  trial.  If your plea is accepted, there will be at least one

19  more hearing, though, where the district judge will determine

20  two things:  First, whether there's a factual basis for your

21  plea; and second, what sentence to impose in your case.  Do

22  you understand all of that?

23          DEFENDANT RANDALL:  Yes, sir, I do.

24          THE COURT:  Okay.  Now, we went over the charge a

25  few minutes ago, possession of a firearm by a convicted felon

1  and the maximum penalties that could apply.  Do you understand

2  the charge?

3          DEFENDANT RANDALL:  Yes.

4          THE COURT:  Are you guilty of this crime?

5          DEFENDANT RANDALL:  Yes.

6          THE COURT:  Okay.  All right.  Now, there is a Plea

7  Agreement, Mr. Savage.  Is that right?

8          MR. SAVAGE:  Yes, Your Honor.

9          THE COURT:  Will you tell us about that, please?

10         MR. SAVAGE:  Yes, Your Honor.

11         In the Plea Agreement the defendant agrees to plead

12  to Count One as set forth in the Bill of Indictment and admits

13  to being guilty of that count.

14         There are no other counts to dismiss so once

15  that's -- so that will be it on that.

16         The sentence as the court's previously announced is

17  in paragraph 3.  The defendant understands and is aware,

18  however, that the Court will consider the advisory United

19  States Sentencing Guidelines.  The plea is made pursuant to

20  Rule 11(c)(1)(B) meaning that the Court has discretion as to

21  what the sentence will be.  The parties, however, will jointly

22  recommend, make the following findings and conclusions:  That

23  the appropriate sentence is one within the applicable

24  Guideline range under Guideline section 5C1.1 and neither

25  party will seek a departure or variance.

1              The United States will inform the Court and the

2    Probation Office of all the facts pertinent to the sentencing

3    process.  And the United States agrees to recommend a sentence

4    at the low end of the advisory Guidelines at the time of

5    sentencing.

6              With respect to forfeiture, Your Honor, the

7    government -- the defendant agrees with regard to each and

8    every asset listed in the Bill of Indictment are seized and

9    the related investigation or administrative state or local

10   action and stipulates and agrees to its forfeiture.  We

11   previously provided counsel with a judgment, agreed judgment

12   with regard to the forfeiture.

13             Your Honor, I would note that the forfeited items in

14   the Bill of Indictment are a Taurus model PT25 automatic

15   caliber semiautomatic pistol, one magazine, and seven live

16   Winchester 25 auto caliber cartridges were seized and to be

17   forfeited pursuant to that agreement.

18             THE COURT:  Okay.

19             MR. SAVAGE:  We've got to the procedure, Your Honor.

20             The defendant agrees to this Plea Agreement is to be

21   conducted before a federal magistrate judge as opposed to an

22   U. S. district court judge and the factual basis is required

23   under federal Rule 11 and will be deferred until the time of

24   sentencing.

25             The defendant stipulates there is a factual basis

1    for the plea of guilty, and the Court may use the offense

2    conduct set out in the Presentence Report as that factual

3    basis.

4         There are many waivers, Your Honor, I'm sure which

5    you will cover. The most important of which is in exchange

6    for the concessions made by the government in the Plea

7    Agreement, the defendant waives all rights to contest the

8    conviction and appeal except for claims of ineffective

9    assistance of counsel or prosecutorial misconduct.

10        With regard to the other provisions of the agreement

11    we would simply note there are no agreements, representations

12    or understandings between the parties in the case other than

13    those explicitly set forth in this Plea Agreement or contained

14    in writing in a separate document later signed by all parties.

15        THE COURT: Thank you very much.

16        MR. SAVAGE: Your Honor, I would note just while

17    we're here that I have -- pursuant to the forfeiture, I would

18    have Consent Order and Judgment to hand up.

19        THE COURT: Great. Thank you.

20        All right, Mr. Savage, thank you very much. I'll

21    take up that consent item at the end of the proceeding, but I

22    appreciate you're bringing that to my attention.

23        Let me come back over here to Mr. Williams and

24    Mr. Randall.

25        Mr. Williams, of course Mr. Savage is providing

1  simply a highlight, a summary of the highlights of that Plea

2  Agreement.  Anything you'd like to add?

3          MR. WILLIAMS:  No, Your Honor.

4          THE COURT:  Okay.  Then let me come back to

5  Mr. Randall for a few more questions.

6          Mr. Randall, as I just mentioned of course

7  Mr. Savage summarized here on the record some of the

8  highlights of your Plea Agreement.  That's an important

9  document, of course, in your case.

10         My first question to you is have you been over that

11 document carefully with your lawyer?

12         DEFENDANT RANDALL:  Yes, sir.

13         THE COURT:  Okay.  And do you understand that those

14 are the terms of your Plea Agreement with the government and

15 do you agree with those terms?

16         DEFENDANT RANDALL:  Yes.

17         THE COURT:  Now, you're waiving some rights you have

18 to appeal so let me just ask you a couple of questions about

19 that.

20         Do you understand that the right to appeal your

21 conviction and/or your sentence has been expressly waived in

22 your Plea Agreement?

23         DEFENDANT RANDALL:  Yes, sir.

24         THE COURT:  In addition, do you understand that the

25 right to challenge your conviction and/or your sentence in

1   what's called a postconviction proceeding has also been

2   expressly waived in your Plea Agreement?

3              DEFENDANT RANDALL:  Yes, sir.

4              THE COURT:  Is that your signature that appears on

5   the Plea Agreement?

6              DEFENDANT RANDALL:  Yes, sir.

7              THE COURT:  Now, has anybody threatened, intimidated

8   or forced you to do this today?

9              DEFENDANT RANDALL:  No, sir.

10             THE COURT:  Other than the terms of your Plea

11  Agreement, has anybody made you promises of leniency or a

12  light sentence to get you to plead guilty?

13             DEFENDANT RANDALL:  No, sir.  It wasn't a promise,

14  but we discussed it before as far as like me losing a point,

15  as far as taking responsibility, that was the only thing that

16  my mind was changed on, but no, sir.

17             THE COURT:  Okay.  Well, maybe we better -- maybe we

18  better have some further discussion about that.

19             Mr. Williams, what's that all about?

20             MR. WILLIAMS:  Your Honor, what he's speaking to --

21             THE COURT:  Is he talking about his acceptance of

22  responsibility points?

23             MR. WILLIAMS:  He is, Your Honor.  There was the two

24  points.  He's referring to the additional point that would

25  give him a total of three.  However, he did not accept his

1  plea at that time because we were going to proceed to trial.

2          And I spoke with him and the U. S. Attorney's Office

3  regarding that, and he's fully aware of that.  He was provided

4  the date, um, I provided a lot of documentation on the date he

5  had accepted to get the additional point.  He did not accept

6  it at that time.  So he's fully advised.  He may not be happy

7  with that but ...

8          THE COURT:  Okay.  Well, Mr. Savage, what do you

9  want to say about that?

10          MR. SAVAGE:  Well, Your Honor, and again, I just hit

11  the highlights.  If the Court refers to paragraph 6D, the

12  defendant has agreed in the Plea Agreement with regard to the

13  acceptance of responsibility, a decrease of the defendant's

14  offense level by one additional level under Guideline Section

15  3E1.1(b) is not appropriate under the circumstances.

16          However, the other provisions we just mentioned with

17  regards to the low end of Guidelines and the two points with

18  the acceptance of responsibility are addressed -- are not

19  addressed in here.  I mean, the only agreements are those that

20  appear in the Plea Agreement.  And I think that the additional

21  level under 3E1.1(b) is addressed.

22          Assuming that the Court accepts the plea, the two

23  points under the other part would be addressed by the

24  sentencing court at that time.  There are no promises

25  regarding that, but assuming that, you know, the plea is

```
 1    entered appropriately and there are no other problems, then I
 2    think he would get those credits.  But that would be under
 3    11(c)(1)(B), would be up to the sentencing court.
 4              THE COURT:  Okay.  So the provision we're talking
 5    about here is paragraph 6.
 6              MR. SAVAGE:  D.
 7              THE COURT:  B.
 8              MR. SAVAGE:  D as in delta.
 9              THE COURT:  D, sorry, which reads, quote, "The
10    parties agree that with regard to acceptance of
11    responsibility, a decrease of the defendant's offense level by
12    one additional level is not appropriate under U. S. Sentencing
13    Guideline 3E1.1(b)."  Okay?
14              MR. WILLIAMS:  And, Your Honor, this is actually,
15    um, the second Plea Agreement.  That is the reason this is
16    included.  There was a date prior when I was dealing with
17    Ms. --
18              MR. SAVAGE:  Jenny Sugar, Your Honor.
19              MR. WILLIAMS:  It was before Ms. Sugar.  I can't --
20    yes.  Ms. Sugar picked up the case after -- Your Honor, after
21    that date had expired and we came to an agreement on the new
22    Plea Agreement and that's why that's not in there.
23              I've explained that to Mr. Randall.  He just -- he
24    knows that he can't get this point and I've advised him why.
25              THE COURT:  All right.
```

1          DEFENDANT RANDALL:  Well, you also advised me not to

2    sign the first plea.

3          THE COURT:  Well, you know, Mr. Williams, he's got

4    to make a knowing choice here today to do this.

5          MR. WILLIAMS:  Yes.  If he doesn't want to, Your

6    Honor, he signed this.  I provided him everything in writing.

7    He has a copy.  I provided him another copy and it has been

8    signed.  I provided him all correspondences from, um, the

9    U. S. Attorney's Office regarding the deadlines to accept the

10   Plea Agreement.  He made the choice not to.  We later entered

11   into this Plea Agreement.  I don't know anything else that I

12   can do.

13         THE COURT:  All right.  Well, hold on just a second

14   here.  Yes, sir.

15         MR. SAVAGE:  Your Honor, I just want to point out

16   with regard to this point, there's no secret about this.  The

17   docket call was on the 3rd of January.

18         The requirement under that section is that the plea

19   has to be timely and save the government time and effort.  I

20   mean on the 3rd of January the government was ready for trial.

21   I mean if he accepts responsibility he gets the two points.

22   But under the definition of the third point of the Guidelines,

23   the agreement states what I think the facts and the law would

24   be is that it doesn't apply.

25         THE COURT:  Okay.  Well, Mr. Randall, do you

1    understand the contents of the paragraph 6D which I just read

2    in the record a moment ago?

3              DEFENDANT RANDALL:  If you could elaborate a little

4    bit more probably so, but most likely yes.

5              THE COURT:  Well, do you feel a need to talk to your

6    lawyer some more about this before you enter your plea?

7              MR. WILLIAMS:  Let them have a moment, Your Honor.

8              THE COURT:  Yes, sir.

9              (Pause)

10             THE COURT:  Okay.  So Mr. Williams, where are we?

11             Okay.  Well, Mr. Randall, perhaps I should ask you

12   this question:  What we're talking about, of course, is the

13   contents of the paragraph 6D which reads, "The parties agree

14   that with regard to acceptance of responsibility a decrease of

15   the defendant's offense level by one additional level is not

16   appropriate under U. S. Sentencing Guideline Section

17   3E1.1(b)."  That's the provision of the Plea Agreement that

18   you signed.  Do you understand that?

19             DEFENDANT RANDALL:  Yes, sir.

20             THE COURT:  All right.

21             All right.  Have you had enough time to discuss with

22   your lawyer any possible defenses you may have to these

23   charges?

24             DEFENDANT RANDALL:  Yes, sir.

25             THE COURT:  Are you satisfied with the services of

1    your attorney in this case?

2              DEFENDANT RANDALL:  No.

3              THE COURT:  No.

4              All right, let's do this:  I'm going to suspend

5    this.  I think that Mr. Randall probably just needs some

6    additional time with Mr. Williams to talk this through, so I'm

7    going to stop right there and we'll pick this up at a later

8    time, Mr. Williams, if you tell us that's what the appropriate

9    action is.

10              Is this on a trial calendar.  I mean it was, but is

11    it currently on a trial calendar?

12              THE SPEAKER:  Right.

13              THE COURT:  I suppose it was on the calendar for

14    January 3rd, right?

15              MR. WILLIAMS:  It was.

16              MR. SAVAGE:  Yes, Your Honor.

17              THE COURT:  Okay.

18              THE SPEAKER:  Once the Plea Agreement is files, it

19    takes it off.

20              THE COURT:  It took it off.  Okay.

21              DEFENDANT RANDALL:  So you're saying the plea is

22    over now?

23              THE COURT:  Well, no, what I'm saying to you is that

24    I'm going to stop the plea and Rule 11 proceeding at this

25    point and give you some additional time to talk to

```
 1    Mr. Williams about all of this to see if this is actually what
 2    you want to do.
 3                MR. WILLIAMS:  I mean it is.  It is.  You asked me
 4    to be honest and I'm just being honest.
 5                THE COURT:  No.  I appreciate your honesty.  That's
 6    what I want from you.  But in light of your answer and in
 7    light of the discussion we just had about paragraph 6D, I
 8    think it might be better if you talk to your lawyer before we
 9    go through the rest of this.  So Mr. Williams, why don't you
10    talk to him.
11                DEFENDANT RANDALL:  Mr. Keesler, sir?
12                THE COURT:  Yes.
13                DEFENDANT RANDALL:  With all due respect I just --
14    you know, you asked me to be honest.  I said he's a good guy
15    but there's things that could probably have been elaborated a
16    little bit more.  But I'm just ready to get this over with.  I
17    take full responsibility.
18                THE COURT:  Well --
19                DEFENDANT RANDALL:  He told me 41 months.  I lost a
20    level and I'm willing to be done with that.  I mean ...
21                THE COURT:  All right.  Well, I appreciate that, but
22    you're going to have to trust me on this.  I want to you talk
23    to your lawyer and then we'll come back as soon as we can if
24    that's appropriate.
25                All right.  That's it.  Thanks.
```

1          (The hearing adjourned at 1:08:06 p.m. and resumed

2    at 1:57:28 p.m. as follows:)

3          THE COURT:  Okay.  We are returning to an earlier

4    matter.  Specifically this is Jamar Seron Randall, 3:10CR174.

5          Mr. Williams has returned with him and Mr. Savage is

6    here for the government.

7          When we were last here in open court an hour or so

8    ago we were conducting a plea and Rule 11 hearing for

9    Mr. Randall.  It hit a couple of bumps in the road which led

10   me to conclude he might want to talk with his lawyer at least

11   for a few minutes before we proceed along.

12         So Mr. Williams, have you had a chance to talk with

13   him in the back?

14         MR. WILLIAMS:  I have, Your Honor.

15         THE COURT:  Okay.

16         MR. WILLIAMS:  I can -- if I could give a brief,

17   just a synopsis of where I think we are.

18         THE COURT:  Sure.

19         MR. WILLIAMS:  Your Honor, this is a case that

20   Mr. Randall -- the offense date was January 28th, 2010.

21   Mr. Randall took a plea in state court back in August, I think

22   the 17th -- 31st of 2010.

23         Before that happened, on August 17th the indictment

24   was issued in this case, in federal court, but he was not

25   served, he was not notified of that prior to him taking a

1   state plea.  So he was placed on probation.  He was out until

2   sometime early October.  At that time he was arrested.  So

3   that's kind of led to where we are today, because it is true

4   that he's, in all actuality, being punished twice for the same

5   offense.  So I think that led to Mr. Randall not wanting -- he

6   initially didn't want to take a plea.  He had already been

7   punished so he felt like it couldn't get any worse, so he was

8   wanting to proceed to trial and that's what he told me.

9          I provided him the information when I received the

10  first plea offer from Ms. Dillon.  I printed out the e-mail,

11  um, with the actual date that it would expire, which should

12  have been December 15.  He stated that he didn't want to take

13  a plea, he wanted to proceed.  So therefore I filed a motion

14  on his behalf.

15         We discussed the motion to suppress later.  He

16  indicated that he wanted me to contact the U. S. Attorney's

17  Office about another possible Plea Agreement.  Ms. Sugar was

18  handling the case then.  At that time she extended a new Plea

19  Agreement, which is the one that's before Your Honor.  That

20  was provided to Mr. Randall.  He did sign that.  He wanted to

21  do that.  And I advised him then, and I provided him when I

22  first met him the different statutes on sentencing and the

23  different nature so he know what he was facing.  About the

24  acceptance of responsibility, I provided him with that when we

25  initially met prior to his first detention hearing.

1          And I think he was just -- he wants that extra

2    point.  And I advised him then that if he didn't take it by

3    the 15th that he lost that.  And I advised him to also go back

4    and look at the acceptance of responsibility statute from the

5    Sentencing Guidelines that I provided him.  I showed him

6    another copy today.  And he wants to go forward.

7          It was just a matter where he at one point wanted to

8    proceed to trial.  He missed out on his deadline.  Then he

9    later said he wanted to take a plea after I presented him with

10   everything again.  And we talked about it.  I couldn't force

11   him to take the plea, but just after talking to him more and

12   more, and I guess his mother become involved in speaking with

13   him, he decided he wanted to take it.

14         So when I spoke to him in the back, he said he did

15   want to take his plea.  That wasn't really the issue.  He

16   wanted to do it today.

17         And I told him I didn't have any problem with what

18   he said, to be honest, because I told him I've done everything

19   I can in this case.  And that's why he told me to bring it

20   back out and he wanted to take the plea today.  So he

21   understands.  It's just -- basically it's a hard pill to

22   swallow being that he was punished already once.

23             THE COURT:  Right.

24             MR. WILLIAMS:  For the same offense and that's kind

25   of where we are.

1          THE COURT:  Okay.  Well, appreciate that summary.

2          I'm curious, Mr. Williams, has he been sentenced in

3     the state case?

4          MR. WILLIAMS:  He actually was, Your Honor.  He was

5     placed on supervised probation.

6          THE COURT:  Okay.

7          MR. SAVAGE:  Your Honor, for the record, I would

8     note that the government had a petite waiver from the

9     Department of Justice.

10         MR. WILLIAMS:  An I have been provided that.

11         And I would just continue -- Mr. Randall, Your

12    Honor, I would say that he is one of the smartest, if not the

13    smartest person I've ever represented.  Before we could even

14    address that issue, he did some research and found it on his

15    own.  Wanted me to file the motion.  I told him that it wasn't

16    a statute; it was basically the U. S. Attorney's office

17    policy, and Ms. Dillon at the time provided me the waiver,

18    which I notified Mr. Randall.

19         And I notified him that the waiver was because he

20    received unsupervised probation without any jail time; an

21    active sentence in a state case, and that's why they were

22    proceeding.  But he found that on his own.  Before I could

23    even address it with him, he found it on his own.  So he's

24    very intelligent.

25         THE COURT:  All right.

1          MR. SAVAGE:  Your Honor, I would only note in

2     addition that the provision under Guideline Section 3E1.1(b),

3     it's the government that must make the motion, so just by way

4     of further explanation to the defendant.

5          The Court can consider whether to grant two levels.

6     The government must make the motion for the third level.  And

7     given the fact the plea was entered after the plea deadline,

8     and as we prepared for trial, the government declined to make

9     that motion.  So that is really the state of the offer at this

10    point.

11         THE COURT:  Okay.  Fair enough.

12         Well, Mr. Randall let me come back to you then if I

13    may.

14         My job today is to -- and every day is to make sure

15    when folks enter their guilty plea they do so knowingly and

16    voluntarily.  In other words, they are making a free choice to

17    do that.  And that's the purpose of these questions that we go

18    through at some length is to make sure that the choice you're

19    making today is the one you're making voluntarily and

20    knowingly.

21         And we've gone most of the way through this.  We

22    just have a few questions remaining, but why don't we start

23    with a few just review questions here.

24         You understand that your plea is to a violation of

25    Title 18 United States Code, Section 922(g)?

1          DEFENDANT RANDALL:  Yes, sir.

2          THE COURT:  Do you understand that that's the crime

3  we referred to more commonly as possession of a firearm by a

4  felon?

5          DEFENDANT RANDALL:  Yes, sir.

6          THE COURT:  Do you understand the maximum penalty

7  information that I provided to you earlier during this

8  proceeding?

9          DEFENDANT RANDALL:  Yes, sir.

10          THE COURT:  I do understand both from your prior

11  appearances and also the information that's been provided here

12  today that you did enter a plea in state court to this

13  offense, so I guess I wanted you to know that I am aware of

14  that fact.  Okay.  Do you understand that?

15          DEFENDANT RANDALL:  Yes, sir.

16          THE COURT:  Okay.  Now, we have been over the Plea

17  Agreement, and in particular the provision contained at

18  paragraph 6D, which relates to acceptance of responsibility.

19  Do you understand that provision?

20          DEFENDANT RANDALL:  Yes.  Yes, sir, I do.

21          THE COURT:  And essentially what's happening there

22  are the parties are is thing forth their understanding that

23  essentially you're going to get two points reduction for

24  acceptance, but you're not going to get that third point based

25  on all the circumstances that took place here.  Do you

1    understand that?

2            DEFENDANT RANDALL:  Yes, sir, I do.

3            THE COURT:  Okay.  Knowing that fact, do you want to

4    go forward with your plea today?

5            DEFENDANT RANDALL:  Yes, sir.

6            THE COURT:  Okay.  Let me ask you a few more

7    questions, and then once we have completed those, I may ask

8    you a couple of more just to make sure that we're all on the

9    same page.  Okay?

10           DEFENDANT RANDALL:  All right.  Yes, sir.

11           THE COURT:  Now, I asked you this question before

12   and I want you to be honest, that's not the point.  I'm not

13   trying to encourage you to be anything other than completely

14   candid with me.

15           We had some conversation earlier about

16   Mr. Williams's services on your behalf.  Do you believe you

17   have had enough time to talk with him about any possible

18   defenses you have to these charges?

19           DEFENDANT RANDALL:  Yes, sir.

20           THE COURT:  Are you satisfied with his services on

21   your behalf?

22           DEFENDANT RANDALL:  Yes, sir.

23           THE COURT:  I understand that you're of course

24   frustrated as anybody would be.  This is a tough situation.

25   But, for example, are you satisfied with the conversation you

1    had in the back with him a few minutes ago?

2          DEFENDANT RANDALL:  Yes, sir.

3          THE COURT:  Is there anything you'd like to say at

4    this time about his services?

5          DEFENDANT RANDALL:  Um, like I say, first I'd will

6    to apologize to the Court, you know, for the interruption.

7          THE COURT:  Well, don't worry about that.

8          DEFENDANT RANDALL:  Like I say I don't have any

9    problem with Mr. Williams.  He did a good job.  You know,

10   there were certain things I need in depth information upon.

11   And like you said earlier it is a tough, tough pill to

12   swallow, you know, but I am satisfied, and just ready to get

13   this over with.

14         THE COURT:  Okay.  Have you heard and understood all

15   parts of this proceeding so far, Mr. Randall, and do you still

16   wish to plead guilty?

17         DEFENDANT RANDALL:  Yes, sir.

18         THE COURT:  Do you have any questions or statements

19   you'd like to make at this time?

20         DEFENDANT RANDALL:  No, sir.

21         THE COURT:  Just a final question or two by way of

22   summary, and we have been over some of this two or three times

23   I know, and I'm not trying to insult your intelligence because

24   you're obviously a bright person.

25         But what you're doing today of course is entering

1    your guilty plea to Count One your Bill of Indictment.  Do you

2    understand that.

3                  DEFENDANT RANDALL:  Yes, I do.

4                  THE COURT:  The charge is possession of a firearm by

5    a convicted felon.  We went over that charge earlier on the

6    record.  Do you remember that?

7                  DEFENDANT RANDALL:  Yes, sir.

8                  THE COURT:  The maximum penalties that could apply

9    we've discussed here, and you're doing this today pursuant to

10   the terms of the Plea Agreement which we've also reviewed.  Is

11   that correct?

12                 DEFENDANT RANDALL:  Yes, sir.

13                 THE COURT:  Do you understand your Plea Agreement?

14                 DEFENDANT RANDALL:  Yes, sir, I do.

15                 THE COURT:  Have you been over that carefully with

16   your lawyer?

17                 DEFENDANT RANDALL:  Yes, sir, I have.

18                 THE COURT:  Now, knowing all of the things we have

19   discussed here today, the fact that there's been a plea in

20   state court, the fact that there's this provision in your Plea

21   Agreement, all the circumstances we've talked about, is this

22   what you want to do?

23                 DEFENDANT RANDALL:  Yes, sir.

24                 THE COURT:  All right.  Mr. Williams, a final

25   question for you:  You have worked with this man for a good

1   while.  Have you reviewed with Mr. Randall the terms of the

2   Plea Agreement, which of course are important, and are you

3   satisfied he understands not only his Plea Agreement but all

4   aspects of his case?

5                MR. WILLIAMS:  I have, Your Honor.  I presented him

6   with the Plea Agreement, different cases regarding being

7   prosecuted again for the same offense.  Information regarding

8   the petite policy.  Information regarding the motions to

9   suppress, the differences in specifically the case that I

10   think is out of Richmond, Virginia, that is very analogous to

11   his matter, and we discussed that this is what is in his best

12   interest.

13                THE COURT:  All right.  And do you believe he

14   understands his situation and knows what he's doing today?

15                MR. WILLIAMS:  Yes, sir.

16                THE COURT:  All right.  Mr. Savage, do you want to

17   add anything based on the record we have made here today?

18                MR. SAVAGE:  Yes, Your Honor.  I just from the

19   forfeiture consent.

20                THE COURT:  Okay.  All right.

21                Here's what you'll going to do -- thank you very

22   much -- all right.  Here's what I would propose:  We were

23   doing this electronically.  I sort of fouled that up and we do

24   have a hard copy actually, the old-fashioned way of doing the

25   plea and Rule 11 hearing.  So what I would propose to do,

1  Mr. Williams, is hand down as we used to the hard copy plea

2  and Rule 11 form which I filled out.  If you'll take a look at

3  that with Mr. Randall, if everything is in order, please sign

4  it.

5         All right.  Thank you very much.  This will confirm

6  I do have in hand the hard copy plea and Rule 11 hearing form.

7  It's been signed by the defendant, Mr. Randall, and also by

8  his counsel, Mr. Williams.

9         Based upon the representation and answers given both

10 by the defendant and his lawyer in this proceeding, the Court

11 therefore does find that the defendant's plea of guilty is

12 knowingly and voluntarily made, and that the defendant

13 understands the charges, potential penalties and consequences

14 of his plea.  Accordingly, Mr. Randall's plea of guilty is

15 hereby accepted.

16        I'm signing the form on behalf of the court.  We

17 will make that a part of his file.

18        In addition, I do have in front of me as well the

19 Consent Order and Judgment of Forfeiture in the case.  This

20 also is signed by a representative for the government and by

21 the defendant and Mr. Williams, his counsel.  The effect of

22 this document, based upon the consent of the parties, will be

23 a forfeiture of the firearm along with some ammunition that

24 was seized as part of the investigation into the case.

25        I will likewise sign that document and direct the

```
 1   clerk to file it with the plea and Rule 11 form.

 2           Okay.  Anything else for Mr. Randall today?

 3   Mr. Savage?

 4           MR. SAVAGE:  No, Your Honor.

 5           THE COURT:  Mr. Williams?

 6           MR. WILLIAMS:  No, Your Honor.

 7           THE COURT:  Okay.  Mr. Randall, I wish you luck the

 8   rest of the way.

 9           DEFENDANT RANDALL:  Thank you.

10           THE COURT:  Thank you very much.

11           (Hearing concluded at 2:15:02 p.m.)

12                    - - - - - -

13   UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF NORTH CAROLINA
14

15

16              CERTIFICATE OF REPORTER

17           I, JOY KELLY, RPR, CRR, certify that the foregoing
     is a true and correct transcription from the digitally
18   recorded proceedings transcribed by me to the best of my
     ability in the above-entitled matter.
19

20

21

22   S/  JOY KELLY                     _____

23   JOY KELLY, RPR, CRR                     Date
     U.S. Official Court Reporter
24   Charlotte, NC

25
```